Joseph PAGANO, Libelant,

v.

UNITED STATES of America,
Respondent,

and

Ira S. Bushey & Sons, Inc., Respondent-
Impleaded.

No. 20465.

United States District Court
E. D. New York.

Jan. 15, 1959.

DiCostanzo & Klonsky, Brooklyn, N. Y., for libelant, Robert Klonsky, New York City, of counsel.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Benjamin H. Berman, New York City, and William A. Wilson, Admiralty and Shipping Section, Dept. of Justice, New York City, of counsel, for respondent.

Alexander, Ash & Schwartz, New York City, for respondent-impleaded Ira S. Bushey & Sons, Inc., Sidney A. Schwartz and Joseph Arthur Cohen, New York City, of counsel.

BYERS, Chief Judge.

This libelant was a pipefitter employed by Bushey, the impleaded respondent, and he sustained the injury of which he complains on November 23, 1955. He was at work on the U. S. S. Alcor, then in the Bushey Yards, undergoing engine room and other extensive repairs, pursuant to a contract and job order No. 1909/1.

He was in the lower level of the engine room, which is about eight feet above the keel; the entire space in which he was working measures about fifty feet fore and aft, and about sixty feet athwartship. The upper level of the engine room is ten feet above the lower level, and the former is of grill or open work construction.

The surface of the lower level is composed of steel plates which constitute that deck; in order to give access to pipes and other subsurface elements of equipment, those plates are removable. They are about 24″ by 36″ in size, but the weight has not been stated. These plates rested upon supporting angle irons and were held in position by screws inserted therein.

The repair job required the removal of certain of those plates, and it was in connection with that task that the libelant was working on subsurface pipes connected with various elements of the engine room equipment, such as condensers, etc. There were others in his gang, and some members of the crew also similarly engaged in that part of the ship.

His testimony as to the precise happening is uncontradicted, and is therefore accepted for the purpose of this decision. It should be said that he reported his injury to his employer, and that an accident report was filed by the latter within a day or two; that the recitals in that report are consistent with the libelant's version of the accident.

He was working on the starboard side of the engine room, somewhat aft, and finding it necessary to procure a burner to apply to one of the angle iron flanges, he stepped out of the space in which he was standing and on to adjacent deck plates which had not been removed; he proceeded generally from the starboard to the port of the engine room, and when he reached a place near the port side somewhat aft of a worktable which was alongside the port boiler, he stepped upon a plate which had been removed but not placed upon an adjacent seated plate, but was laid across the opening from which it had been taken; he stepped on that plate and it tilted so that he fell in such a manner that his right knee struck a side of the open space across which the plate was placed, which so injured the knee that it was necessary at a subsequent time to have one of the semilunar cartilages removed.

He testified that the reason that he crossed to port from starboard was that he observed a line or power cable which descended (about centrally) from overhead, a portion of which lay upon the engine room floor.

Obviously his attention was on that line which he expected to supply power to operate the torch which he was required to apply to the angle iron, in the space where he had been working.

Thus it would seem that his attention was centered upon the line, and he did not observe the opening into which he fell, because he said that it lay in a dark part of the engine room space; that the only light that he saw was from a droplight over the workbench above referred to. The record is barren as to the number or power of electric lights in this part of the ship, under ordinary conditions. It is reasonable to suppose that even Pagano's preoccupation with tracing the line would not have prevented him from seeing the unusual position of the plate upon which he stepped, had the lighting been sufficient to enable him to do so.

In the opinion of this court that is the only important legal aspect of this case, because if this engine room area was not adequately illuminated to render it safe for the repairmen to walk about in, as required by their tasks, it was not a reasonably safe place in which to work.

The testimony is not contradicted that as the men moved about in this part of the ship, when they were required to cross an opening caused by the removal of plates, (and there were several in various locations) they had to step from angle iron to angle iron, and that the latter were about two inches in top width. These afforded a reasonably secure footing to a normal person, but walking across them was necessarily a venturesome thing, and it seems obvious that adequate preparations should have been made by the respondent as the owner of this ship, to reduce obvious hazards incident to such movements, to a minimum, by introducing extra lighting by the use of cluster lamps of adequate wattage, or otherwise.

This means that the lighting which was sufficient for the engine room crew to conduct their customary functions when all the deck plates were in place, and the subsurface pipes did not require repairs, would not be adequate for the safe accomplishment of all the tasks described in this record.

There is no showing that any efforts were made prior to the introduction of the Bushey pipefitters into this part of the ship, to make adequate provision for necessary extra illumination, such as the circumstance clearly required.

It was no secret from the respondent that in order to carry out the various repairs specified in the contract to which reference has been made, that many plates constituting this engine room deck or flooring, would have to be removed and stay removed for as much as two or three hours at a time.

Paragraph 9, for instance provides in part:

"9. Where machinery and piping is specified to be removed, it shall be removed from the ship complete with pipe supports, insulation brackets, foundations, pipe guards, etc. * * *"

In the respondent's brief at Appendix A, among the items which would seem to require the removal of these engine room deck plates were:

47. Overhaul of main circulating pump;

83. Repairs to general service pump;

93. Repairs to auxiliary circulating pump;

108. Replacement of auxiliary circulating pump.

There are other items in that appendix which would seem to fall within the indicated category.

The testimony for the respondent as to lighting, consists in one or two general statements that reading and writing were possible in this part of the ship and had been conducted; that may be accepted as true under ordinary conditions of engine room maintenance, but does not suffice as to the special requirements of this considerable overhaul of subsurface equipment.

As has been said, the statement of the libelant that the only light which he could observe anywhere near the place where he fell, was that furnished by the droplight over the workbench, has not been discredited by the respondent's said testimony.

An examination of the record and the exhibits is convincing to this court that the respondent failed to provide a reasonably safe place, by reason of the deficiency in illumination, in which the libelant was required to work, and for that reason he is entitled to a decree. This is a finding.

As to the nature and extent of the libelant's injuries, having in mind that he resumed his occupation in the month of July, 1956, and in view of the testimony as to his daily pay, the item of loss of earnings is fixed at

$2,500.00

To this should be added:

| Conceded medical expenses of | $ 500.00 |
| Pain and suffering | $2,500.00 |

As to permanent disability, the testimony is that he has suffered a limitation of about 30% in the use of the right leg as the result of the removal of the semilunar cartilage, but that limitation is effective only when he assumes a squatting position; seemingly, this does not prevent his following his occupation as a pipefitter.

| The award for this item is | $2,000.00 |
| Total | $7,500.00 |

The impleaded respondent Bushey has not been brought within the indemnity portion of the contract, since the libelant's injury did not arise "in whole or in part from the fault, negligence, wrongful act or wrongful omission of the Contractor * * *." The foregoing is quoted from the applicable portion of the contract for repairs.

In the opinion of this court, the failure to provide a safe place to work was due to the omission of the respondent in the respects heretofore indicated. Obviously, Bushey might well have insisted that the respondent provide adequate illumination for the lower engine room space in which these men had to work; failure on the part of Bushey to insist upon the adoption of corrective methods might have given rise to an independent cause on the part of the plaintiff against his employer, but for the provisions of the Longshoremen's Compensation Act, 33 U.S.C.A. § 901 et seq., which stand in his way.

For failure on the part of the respondent to demonstrate a responsibility on the part of Bushey as indemnitor, the impleading petition will be dismissed.

Settle decree.